Argued and submitted October 8, 1990, reversed and remanded in part; otherwise affirmed April 24, 1991

BEVERLY ENTERPRISES, INC.,
and Beverly Enterprises-Oregon, Inc.,
dba Chehalem Convalescent Center,
Gladstone Convalescent Center,
King City Convalescent Center,
Mountain Park Convalescent Center,
Mountain View Convalescent Center,
Cedarwood Convalescent Center,
Corvallis Care Center,
Hillside Heights Convalescent Center,
Green Valley Convalescent Center,
Laurelhurst Care Center, Siuslaw Care Center,
Camelot Care Center, Tri-City Health Care,
Forest View Care Center, Centennial Health Care,
Ivorena Care Center, Linn Care Center,
Powellhurst Nursing Home, Raleigh Care Center,
Capital View Center, Sunset Care Center,
Tigard Care Center and Tillamook Care Center,
*Petitioners,*

*v.*

SENIOR SERVICES DIVISION,
*Respondent.*

(CA A62645)

809 P2d 1360

Deborah A. Elvins, Seattle, Washington, argued the cause for petitioners. With her on the brief were Kathryn D. Hoffman and Stoel Rives Boley Jones & Grey, Seattle, Washington.

Jas. Adams, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Petitioners, Beverly Enterprises, a corporation, and Beverly Enterprises-Oregon (Beverly-Oregon), a wholly owned subsidiary of Beverly Enterprises, doing business as 23 long-term nursing care facilities, seek review of a Department of Human Resources, Senior Services Division (SSD) final order in a contested case concerning Medicaid reimbursements.[1] Because all of the issues on review relate to SSD's treatment of Beverly-Oregon and its conclusion that Beverly-Oregon is not entitled to the Medicaid reimbursement that it claimed, for convenience, we refer to petitioners as Beverly-Oregon. We review SSD's decision for substantial evidence and errors of law. ORS 183.482.

SSD is the state agency responsible for setting reimbursement rates for long term care facilities participating in the Oregon Medicaid Program. ORS 410.070. Beverly-Oregon contracts with SSD to provide, through its nursing homes, care to patients eligible for Medicaid in exchange for Medicaid reimbursement to compensate it for its costs. Each Beverly-Oregon nursing home files annual financial statements with SSD, setting out its costs for patient care. OAR 411-70-300; OAR 411-70-420. SSD audits those statements and either allows or disallows the claimed costs. From 1985 through 1987, premiums for workers' compensation insurance for nursing home employees were reimbursable. If the facility was self-insured, however, only the amount of claims actually paid during a given year was an allowable cost.

---

[1] Before SSD, the only parties were Beverly Enterprises, Inc., and Beverly Enterprises-Oregon, Inc.; however, the case was entitled "In the Matters of" the individual nursing homes. ORAP 4.15(2) provides that the title of the petition for judicial review "shall be as it was before the agency to the extent possible, showing appropriate party designations as petitioner and respondent." In accordance with that requirement, instead of naming Beverly Enterprises and Beverly-Oregon as petitioners, the caption of the petition is the same as it was before SSD, except that the individual nursing homes are designated as "petitioners" and SSD is designated as the respondent. ORAP 4.15(2) further provides:

"The Administrator may correct the title of the petition for judicial review to include all persons who were parties to the proceeding before the agency and to designate properly the parties according to their status on judicial review."

Because it is apparent from SSD's order that Beverly Enterprises and Beverly Oregon are the properly designated parties on judicial review, we amend the title of the petition accordingly.

Effective May 1, 1985, Beverly Enterprises, the parent corporation, entered into a contract for workers' compensation insurance with The Travelers Insurance Companies (Travelers). The policy provided standard workers' compensation coverage for nursing home staff in Oregon and in other states where Beverly Enterprises and its subsidiaries operated nursing homes. Travelers also provided services for claims administration, payment, investigation and record keeping. Beverly Enterprises paid the premiums, as calculated by an independent actuarial firm, and each of the Beverly-Oregon facilities paid a prorated portion of the total monthly premium, based on its payroll and claims experience, to Beverly Enterprises.

Travelers purchased a reinsurance agreement from Beverly Indemnity, Ltd (Indemnity), a Bermuda corporation wholly owned by Beverly Enterprises. Under that policy, Travelers retained liability for each workers' compensation claim in excess of $250,000 in 1985 and in excess of $1,000,000 thereafter and retained liability for all claims in the event of the insolvency of Beverly Enterprises. Indemnity provided no workers' compensation insurance services to Beverly Enterprises or to Beverly-Oregon. Its sole function was to insure Travelers.

Indemnity is what the insurance industry commonly refers to as a "captive" insurer, a company organized to insure the liabilities of its owner. *See Clougherty Packing Co. v. C.I.R.*, 811 F2d 1297, 1298 (9th Cir 1987). Beverly Enterprises formed Indemnity as part of its program for providing workers' compensation insurance to itself and its affiliates.

Travelers' reinsurance agreement with Indemnity is in standard form. ORS 731.126 defines "reinsurance" as

> "a contract under which an originating insurer, called the 'ceding' insurer, procures insurance for itself in another insurer, called the 'assuming' insurer or the 'reinsurer,' with respect to part or all of the insurance risk of the originating insurer."

Reinsurance runs to the ceding insurer, not to the insured or policyholder. Thus, it does not relieve the ceding insurer of any of its obligations or liabilities on policies that it issues to its insureds. Reinsurance shifts the risk from the insurer to the reinsurer, not from the policyholder to the reinsurer.

Thus, although it may be insured by Indemnity for some or all of the claims that it pays, Travelers retains a direct obligation to pay workers' compensation claims incurred by Beverly-Oregon in accordance with the terms of the policy.

In determining that Beverly-Oregon is self-insured and, therefore, entitled to be reimbursed only for its actual claim costs, SSD considered these factors to be significant: Beverly-Oregon and Indemnity are wholly owned subsidiaries of Beverly Enterprises; Beverly Enterprises paid all of the premiums and had the right to deposit funds with or withdraw funds from Indemnity; the funds held by Indemnity are also available for payment of general liability claims of Beverly Enterprises and serve as collateral for letters of credit issued on behalf of Beverly Enterprises; Travelers retains the right to demand additional funding of Indemnity by Beverly Enterprises, if actual losses exceed estimated losses; and, "most significantly," Travelers retains such a small portion of the workers' compensation risk as to not affect the overall allocation of the substantial majority of the risk to Beverly Enterprises. Beverly-Oregon contends that SSD erred in concluding that it is self-insured and seeks a determination that the workers' compensation arrangement with Travelers constitutes insurance as a matter of law.[2]

Before July 1, 1986, OAR 411-70-360(a) provided that nonreimbursable costs included

"[c]osts which have not been incurred, but have been recorded in conjunction with balance sheet reserve accounts (appropriations of retained earnings), such as self-insurance cost accounts and reserve accounts. The actual costs associated with these accounts shall be recognized only in the period incurred."

Effective July 1, 1986, OAR 411-70-359(n) provided:

"Insurance - Premiums for insurance on assets or for liability purposes, including vehicles, are allowable to the extent that they are related to patient care. Self-insurance costs are allowable only when expense is actually incurred."

SSD has not defined by rule either the term "insurance" or

---

[2] Beverly-Oregon is not considered to be self-insured under the provisions of Oregon's workers' compensation laws. The parties agree that that fact is not determinative.

"self insurance." In its order in this proceeding, however, it held that "SSD considers a provider to be self-insured if it pays the cost of insurance itself and assumes all or almost all of the total risk of claims." SSD articulated the policy behind that interpretation:

> "The intent of the self-insurance rule in limiting reimbursement to claims actually paid is to limit reimbursement to costs actually incurred by the provider. Money deposited into a fund owned by the provider, or the provider's captive, and which is not paid for claims does not represent a cost actually incurred."

Beverly-Oregon concedes that, as between Beverly Enterprises and Indemnity, its "captive" insurer, the arrangement might constitute self-insurance, because Beverly Enterprises could ultimately bear the risk of loss due to claims paid by Indemnity, its wholly owned subsidiary. It contends, however, that, under Oregon law and SSD's rule defining "self-insured," as expressed in its decision in this case, its protection provided by the arrangement with Travelers and Indemnity involves an actual shifting of its risk of loss and, therefore, the arrangement must be characterized as insurance. *See, e.g.,* ORS 731.102; *Baker v. Federal Crop Ins. Corp.,* 241 Or 609, 407 P2d 841 (1965).

SSD argues that, in determining whether Beverly-Oregon's workers' compensation program is self-insurance, the entire Beverly "family" should be treated as a unit and that the nature of the relationship between Indemnity and Beverly Enterprises is determinative. It contends that because, in its relationship with Indemnity, Beverly Enterprises did not shift sufficient risk of loss to qualify as having insurance, Beverly-Oregon, as a member of the Beverly economic family, is also self-insured. As stated in its brief, "SSD submits that it is entitled to interpret its own rule in this contested case so as to consider a parent corporation and its affiliates as part of an economic family comprising the 'self' within the meaning of 'self-insurance'[.]"

We agree that SSD is entitled to interpret its rule in any manner that is reasonably consistent with the rule and the underlying statutes. However, the problem is that SSD's rule, enunciated in this case, defining who is "self-insured" is

not consistent with its application of the "economic family" concept.

The key elements in insurance, under Oregon law and also for purposes of federal income taxation, are risk shifting and risk distribution. *Helvering v. Le Gierse,* 312 US 531, 539, 61 S Ct 646, 85 L Ed 996 (1941). Under the concept of "economic family," recognized in several federal judicial circuits in determining the deductibility of insurance premiums under IRC section 162(a), a parent corporation and its affiliates are treated as a single entity in determining whether there has been a shifting of risk, and the determination turns on whether the arrangement shifts the risk away from the parent. If it does not, the risk is considered to remain within the family, and neither the parent nor the affiliates are considered to have insurance. Rev. Rul. 77-316, 1977-2 C.B.52.

Most cases accepting the concept of the economic family have involved the question of whether the *parent's* payments made to a captive insurer subsidiary are deductible by the parent. *See Clougherty Packing Co. v. Comm'r of Internal Revenue, supra; Carnation Co. v. Commissioner,* 640 F2d 1010 (9th Cir), *cert den* 454 US 965 (1981). The opinions have reasoned, essentially, that, in that context, any losses suffered by the captive insurer reduce dollar for dollar the value of its stock to its insured parent and, therefore, the risk is not effectively shifted away from the insured parent. Other decisions have applied the concept to circumstances existing here, where the insured is an affiliate of the captive insurer and both are subsidiaries of a common parent. *See Mobil Oil Corp v. United States,* 8 Ct Cl 555 (1985). At least one court has rejected the economic family concept in that context, on the ground that it conflicts with the rule stated in *Moline Properties v. Commissioner,* 319 US 436, 63 S Ct 1132, 87 L Ed 1499 (1983), that each corporate taxpayer is a separate entity for tax purposes. *See Humana, Inc. v. DIR,* 881 F2d 247 (6th Cir 1989).

■ We need not decide whether it would be appropriate for SSD to apply the concept of the economic family to determine whether reimbursement of payments made by Beverly-Oregon for workers' compensation insurance is allowable. Although that concept might provide a rationale for SSD's decision, that rationale is not one that can be drawn from the

decision itself. The opinion does not state that SSD considers Beverly-Oregon to be a part of an economic family. It states, instead, that a provider is considered to be self-insured if it has not shifted the risk of loss away from itself. SSD's rule focuses on the risk shifted from the insured provider. In this case, the only evidence is that Beverly-Oregon has the contract with SSD to provide nursing care. Therefore, it must be the provider, unless something changes that conclusion. The order does not find that the provider is other than Beverly-Oregon or explain how Beverly Enterprises' relationship with Indemnity is attributable to or affects Beverly-Oregon, which owns no stock in either of those corporations. It does not make findings concerning whether the risk was, in fact, shifted from Beverly-Oregon.

For those reasons, we conclude that the order does not support the conclusion that Beverly-Oregon is self-insured, as SSD has defined that term. SSD's conclusion that the amounts paid by Beverly-Oregon were not insurance premiums subject to Medicaid reimbursement is not supported by its findings, and the case must be remanded for reconsideration of that question.

■ The second issue concerns SSD's treatment of property costs in calculating Medicaid reimbursements for five facilities leased by Beverly-Oregon from Health Resources, Inc., beginning June 30, 1986. Under rules effective July 1, 1986, Medicaid reimbursement rates for property costs are established by considering two components: The actual reimbursable property costs as of June 30, 1986, and the fair market rental value of the property. The first seven years is a phase-in period during which the proportion of the property cost reimbursement rate based on the fair market value component increases each year.

At the relevant time, OAR 441-70-455 provided that SSD "will establish an interim rate for each facility which is based upon the latest settled audit or desk review of the Nursing Facility Financial Statement." It also provided that, in calculating a facility's property reimbursement rate, the "actual allowable property costs as of June 30, 1986, will be used as the actual base for the phase-in period." That rule applies in the event of a change of ownership of an existing

facility without an interruption in operations. *Former* OAR 411-70-455(4).

In a letter dated June 19, 1986, Health Resources notified the Health Division of the Department of Human Resources, which was then responsible for licensing long-term care facilities and for certifying long-term care facilities for Medicaid participation, that Beverly-Oregon would be leasing its facilities, effective June 30, 1986. In a letter to the Health Division dated June 20, 1986, Beverly-Oregon applied for licenses to operate the Health Resources facilities and also applied for participation of those facilities in the Oregon Medicaid Program. As of June 30, 1986, Beverly-Oregon was the lessee of the five nursing homes and had its own actual allowable property costs.

On June 26, 1986, SSD sent a letter to all Medicaid certified long term care facilities, including each Beverly-Oregon-owned facility and each Health Resources-owned facility, requesting information about each facility's date of construction, date of assumption of operations by the current owner or lessee and information on any major renovations. The letter stated that the requested information was needed for the "process of establishing each facility's property reimbursement rate under the fair market rental value system." It also stated:

> "This data must be received by the Audit Unit by July 15, 1986. If the data is not submitted, the information available at Senior Services Division will be used to establish the interim rate to be effective July 1, 1986."

By July 15, 1986, Health Resources responded to SSD's letter by submitting the requested information about the five facilities. On July 15, 1986, SSD received a response from Beverly-Oregon with regard to all currently owned facilities. The letter also stated that "[t]he information for the facilities that were recently acquired from Health Resources will be provided under separate cover."

SSD calculated the property portion of the interim Medicaid reimbursement rate for each of the five facilities based on data that it had in its file on July 15, 1986. On July 31, 1986, SSD sent a letter to Beverly-Oregon, requesting copies of leases and other documents relating to its leasehold interest in the Health Resources facilities. In a letter dated

August 22, 1986, Beverly-Oregon mailed to SSD copies of leases and other documents relating to the change of ownership of Health Resources' facilities. Those documents show that Beverly-Oregon's lease costs for the facilities beginning June 30, 1986, were significantly higher than the property costs of Health Resources. SSD declined to reconsider its decision. It did concede, however, that, if it had received the additional documents from Beverly-Oregon by July 15, 1986, it would have used that data in calculating the interim rates for the Health Resources facilities for the period July 1, 1986 to June 30, 1987.

Petitioners contend that, in not using the information provided to it by Beverly-Oregon, SSD violated OAR 411-70-455(4), which requires that "actual allowable property costs as of June 30, 1986," be used. They also contend that, because no administrative rule sets a deadline for submitting actual property cost information, SSD has acted pursuant to a "secret" and unlawful deadline in refusing to consider the information submitted after July 15. They argue that SSD cannot rely on the June 26 letter as having provided notification of the deadline, because: The letter was sent to Health Resources, the former owner of the facilities, even though Beverly-Oregon had provided notice to the Health Division of its imminent leasehold interest; the letter did not request information about actual costs, but only sought information relevant to the calculation of fair market rental value; and SSD received the information sought by the letter from Health Resources by the stated deadline and, therefore, should not penalize Beverly-Oregon for not sending it. Beverly-Oregon contends that it did not receive a request from SSD for actual cost information until July 31, 1986, and that that letter did not specify a deadline for response and did not warn that Beverly-Oregon's reimbursement rates would be affected if the information were not received in a timely manner. Finally, it contends that it provided the requested information in the letter of August 22, 1986, and that SSD's refusal to consider that information is in blatant disregard of its own administrative rules.

We are not persuaded. First, although SSD learned of the impending leases from Health Resources before July 15, 1986, it was given no evidence of changes in property costs by that date. Second, Beverly-Oregon cannot reasonably claim

that it did not have notice of the June 26 letter; on July 15, it responded to that letter, stating that it would provide the required information under separate cover, without furnishing a projected date. Finally, although the June 26 letter did not expressly seek actual cost information, it was adequate to alert Beverly-Oregon that it should provide information necessary for the calculation of interim Medicaid reimbursement rates generally, including actual costs.

Beverly-Oregon is deemed to have notice of the administrative rules stating that interim rates would be based on actual costs. Under its administrative rules, SSD was obligated to establish interim reimbursement rates based on the "latest settled audit or desk review" of the facility. It was not required to seek out additional cost information. SSD did not err in concluding that it could rely on information that it had available to it on July 15 to calculate the interim rates and that it was not required to consider information submitted to it after that date. It was entitled to set a deadline for receipt of the required information and did not abuse its discretion in setting July 15 as the deadline.

Reversed and remanded for proceedings not inconsistent with this opinion with regard to Beverly Enterprises-Oregon, Inc.'s right to reimbursement for workers' compensation insurance premiums; otherwise affirmed.