Argued and submitted February 13, affirmed May 15, 1991

### Katherine ROYER,
### Personal Representative of
### the Estate of Kevin D. Royer,
*Appellant,*

*v.*

### MILES LABORATORY, INC.,
### and the State of Oregon,
*Respondents.*

### (A8711-06948; CA A61326)
811 P2d 644

Kathryn H. Clarke, Portland, argued the cause for appellant. With her on the briefs was Richard P. Noble, P.C., Lake Oswego.

Geoffrey R. W. Smith, Washington, D.C., argued the cause for respondent Miles Laboratory, Inc. With him on the brief were Albert W. Shay and McDermott, Will & Emery, Washington, D.C.; Mildred J. Carmack and Schwabe, Williamson, Wyatt, Portland; and Duncan Barr, Deborah H. Leibman and O'Conner, Cohn, Dillon & Barr, San Francisco, California.

Jas. Adams, Assistant Attorney General, Salem, argued the cause for respondent State of Oregon. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

### WARREN, P. J.

Plaintiff is a hemophiliac who alleges that he was infected with hepatitis and AIDS by a blood product called Koate.[1] Defendant Miles Laboratory, Inc. (Miles) manufactured the product, and defendant State of Oregon, through the Oregon Health Sciences Hemophilia Center, sold it to him. Plaintiff's complaint alleged that Miles was negligent and that both defendants are strictly liable. Both defendants moved to dismiss the strict liability claims for failure to state a claim. ORCP 21A(8). The trial court dismissed the claims with prejudice. The case proceeded to trial on the negligence theory, and Miles prevailed. The court then entered a judgment for both defendants. Plaintiff appeals the dismissal of his strict liability claims. We affirm.

The trial court dismissed the strict liability claims because of Oregon's "blood shield" statute, ORS 97.300:

"(1) The procuring, processing, furnishing, distributing, administering or using of any part of a human body for the purpose of injecting, transfusing or transplanting that part into a human body *is not a sales transaction covered by an implied warranty under the Uniform Commercial Code or otherwise.*

"(2) As used in this section, 'part' means organs, tissues, eyes, bones, arteries, blood, other fluids and any other portions of a human body." (Emphasis supplied.)

Plaintiff contends that the statute does not preclude a claim based on strict liability in tort. He reads the statute to mean that furnishing blood "is not a sales transaction covered by an implied warranty [(1)] under the Uniform Commercial Code [(UCC)] or [(2)] otherwise." He argues that "otherwise" refers only to implied warranties outside the UCC.

The state argues that, even if plaintiff's interpretation is correct, "otherwise" still includes strict liability because, when the statute was enacted in 1969, the legal profession still referred to strict liability in warranty terms. Alternatively, both defendants argue that the statute means that furnishing blood

---

[1] Plaintiff died after he had filed a notice of appeal and submitted his opening brief but before the reply brief was filed. After oral argument, plaintiff's personal representative moved to have this court substitute her as appellant. ORAP 8.05(1); ORCP 34. She made the motion within a year of plaintiff's death, and we granted it. For simplicity, we continue to refer to Kevin Royer as plaintiff.

"is not a sales transaction [(1)] covered by an implied warranty under the Uniform Commercial Code or [(2)] otherwise." They argue that the main focus of the statute is on removing the transaction from the category of sales transactions. Under their interpretation, a claim for strict liability would be precluded, because the liability arises from a sale. ORS 30.920.

■       Either interpretation is grammatically tenable. Because the statute is facially ambiguous, we examine its context and legislative history to ascertain the intent of the legislature. ORS 174.020; *Sager v. McClenden,* 296 Or 33, 672 P2d 697 (1983).

■       In 1969, when the statute was enacted, what liability there was for injuries caused by defective products was based on concepts relating to contractual warranties. *See, e.g., Stonebrink v. Highland Motors,* 171 Or 415, 137 P2d 986 (1943). Strict liability in a tort action, however, was at the infant stage. *See* Prosser, "The Assault Upon the Citadel," 69 Yale L J 1099 (1960). Oregon courts did not recognize strict liability until 1965 for extrahazardous products and until 1967 for other products. *See Wights v. Staff Jennings,* 241 Or 301, 405 P2d 624 (1965); *Heaton v. Ford Motor Co.,* 248 Or 467, 435 P2d 806 (1967).

The Supreme Court created strict liability essentially by transmogrifying warranty law into tort law. It explained:

"It has been pointed out, however, that 'the obligation is imposed upon the seller, not because he has assumed it voluntarily, but because the law attaches such consequences to his conduct irrespective of any agreement; and in many cases, at least, to hold that a warranty "is a contract is to speak the language of pure fiction." '

"The word 'warranty,' with its connotation of contract has tended to obscure the fact that the liability imposed upon the seller for harm resulting from defective goods sold by him may rest entirely upon principles of tort law." *Wights v. Staff Jennings, supra,* 241 Or at 304 (quoting Prosser, *Torts* 651, § 95 (3d ed 1964) (quoting Williston, "Liability for Honest Misrepresentations," 24 Harv L Rev 415, 420 (1911))).

When the Court adopted Section 402A of the *Restatement (Second) Torts* (1965) in *Heaton,* it noted that the definition was "conceptually related to the traditional warranty of merchantable quality in the law of sales." 248 Or at 471. Still, pleaders

were slow to recognize that the theories are distinct. As late as 1971, a plaintiff could plead strict liability by alleging breach of an implied warranty. *See Markle v. Mulholland's, Inc.,* 265 Or 259, 509 P2d 529 (1973).

The parties agree that the legislature enacted ORS 97.300 in response to a Florida case that held that blood suppliers could be held liable without fault.[2] In *Russell v. Community Blood Bank, Inc.,* 185 So 2d 749 (Fla App 1966), *aff'd in part* 196 So 2d 115 (Fla 1967), the plaintiff sued the blood bank after she had contracted hepatitis from a blood transfusion. She claimed a breach of implied warranties. The court recognized that courts in other states that had considered the issue had declared the furnishing of blood to be a service, not a sale. However, the court noted:

> "It seems to us a distortion to take what is, at least arguably, a sale, twist it into the shape of a service, and then employ this transformed material in erecting the framework of a major policy decision." 185 So 2d at 752.

The court held that a sale had occurred, thus making the blood bank susceptible to liability without fault.

At a hearing on the Oregon bill, the chairman of the Oregon Medical Association Blood Committee, Dr. Scott, described the Florida decision:

> "[T]he opinion stated the creation of an exemption to the 'strict liability' rule should be undertaken by the Legislature rather than the courts. That would seem to be the reason we are here this afternoon." Minutes, House Public Health Committee, March 13, 1969, p 3.

In the House floor debate, the proponent of the bill, Representative Graham, explained that the bill was written in response to the Florida decision and assured the House:

> "This does not provide for immunity for physicians or blood banks or anyone else against negligence. It simply states that it

---

[2] Many other states also responded to the Florida case by enacting a blood shield statute; at least 48 states have one. *See Roberts v. Suburban Hospital,* 73 Md App 1, 10 n 3, 532 A2d 1081 (1987). The majority of the statutes do not mention strict liability, but the overwhelming majority of cases have interpreted the statutes to preclude it. *See, e.g., Coffee v. Cutter Biological,* 809 F2d 191, 194 (2d Cir 1987); *Morse v. Riverside Hospital,* 44 Ohio App 2d 422, 339 NE2d 846 (1974); *St. Martin v. Doty,* 493 SW2d 95 (Tenn App 1972); *but see DeBattista v. Argonaut,* 403 So 2d 26 (La 1981).

is not [a] sale and therefore implying a warranty in the product." House Floor Debate, March 18, 1969, Tape 7, side 2.

Several witnesses testified that, if the bill were not passed, the prices of transfusions and transplants would skyrocket or they would no longer be available in the state. House Floor Debate, March 18, 1969, Tape 7, side 2. A witness before the Senate Judiciary Committee, Dr. Davis, testified:

"The purpose is significant — to ensure that the blood and tissues * * * should not be considered to be within the concept of a thing to be sold." Senate Judiciary Committee, April 21, 1969, Tape 16, side 1.

The bill passed without any substantial controversy.[3] Significantly, none of the speakers differentiated between warranty liability and strict liability in tort. Any distinction made was between liability without fault and negligence, with several witnesses stressing that injured persons could still have a remedy for negligence. The legislative history makes plain that the legislature intended to preclude liability without fault, whatever its nature.

■ The context in which the statute was enacted helps explain why strict liability was not mentioned expressly when implied warranty was. At that time, the courts had just created strict liability, and it was seen as an offshoot of warranty law that did not need to be separately pleaded. Furthermore, the legislature enacted the statute in response to the Florida decision, which framed the issue in terms of whether a sale had occurred. The main focus of ORS 97.300 is on declaring that the transactions do not constitute sales. Because strict liability cannot arise without there having been a sale, defendants could not be strictly liable.

Plaintiff argues that, if we hold that the statute precludes strict liability, we should limit that holding to nonprofit organizations, thus keeping defendant Miles potentially liable. There is no basis in the statute for that distinction. The trial court correctly dismissed the strict liability claims against both defendants.

Affirmed.

---

[3] One attorney wrote in opposition to the bill, suggesting that liability could be covered by insurance.