Argued and submitted November 16, 1992, reversed and remanded for
reconsideration March 31, 1993

## OREGON OCCUPATIONAL SAFETY
## AND HEALTH DIVISION,
*Petitioner,*

*v.*

## PGE COMPANY,
*Respondent.*

## (SH-91194; CA A73575)

849 P2d 544

David L. Runner, Assistant Attorney General, Salem, argued the cause for petitioner. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Robin Tompkins, Assistant General Counsel, Portland, argued the cause for respondent. With her on the brief was Ann L. Fisher, Assistant General Counsel, Portland.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

### WARREN, P. J.

Petitioner, Oregon Occupational Safety and Health Division (OR-OSHA), seeks review of an order of the Workers' Compensation Board in a contested case'proceeding. ORS 654.290(2)(b); ORS 183.482(8)(a). We reverse.

The facts were stipulated. Respondent Portland General Electric Company (PGE) is an electric utility that operates a facility in Salem, Oregon, which is

"a limited access building under the exclusive control of [PGE. It] contains vehicles for fabrication and repairs, air compressor, welding equipment, metal shop equipment, vehicle servicing and repair equipment, vehicle hoist and pits, and miscellaneous electrical installation and repair equipment. The premises are used to store electrical equipment and to fabricate metal for use in electrical distribution systems."

On August 1, 1991, OR-OSHA cited and fined PGE for violating a lockout/tagout rule relating to the control of hazardous energy. OAR 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.147(c)(5)(ii) provides, in part:

"Lockout devices and tagout devices shall be singularly identified; shall be the only devices(s) [*sic*] used for controlling energy; shall not be used for other purposes[.]"[1]

OR-OSHA alleged that PGE had violated that rule because

"[l]ockout devices and tagout devices were utilized for other purposes than controlling energy:

"(a)   The lockout device was not under exclusive control of the authorized employee performing the servicing or maintenance."

On PGE's appeal, the Board dismissed the citation, concluding that PGE's Salem facility was not subject to that rule. OR-OSHA contends that the Board erred in so ruling. We agree.

The rule on which the Board relied in concluding that the facility was not subject to OAR 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.147

---

[1] That rule is part of the standard adopted by the Oregon Department of Insurance and Finance as minimum performance requirements for controlling hazardous energy in order to prevent unexpected injury to employees. ORS 654.025(2); OAR 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.147(a)(1)(i).

(c)(5)(ii) is OAR 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.147(a)(1)(ii), which provides, in part:

> "This standard [governing the lockout/tagout require-ments for controlling hazardous energy, including the rule that was allegedly violated by PGE] does not cover the following:
>
> "* * * * *
>
> "(B)   Installations under the exclusive control of electric utilities for the purpose of power generation, transmission and distribution, including related equipment for communi-cation or metering[.]"

Conceding that the facility in question was "under exclusive control" of PGE, OR-OSHA nonetheless contends that it is not an installation "for the purpose of power generation, transmission and distribution." OR-OSHA inter-prets the phrase "for the purpose" to mean that the facility must itself generate, transmit and distribute power. PGE counters that the phrase means that, as long as the facility is used in some way, albeit indirectly, for power generation, transmission or distribution, it is not covered by the lockout/tagout rules as provided by OAR 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.147.[2] Because either argument is tenable, we resort to the context in which the Oregon "lockout/tagout" standard was adopted. *Cf. Royer v. Miles Laboratory, Inc.*, 107 Or App 112, 115, 811 P2d 644 (1991). Our review is to determine which interpretation is more reasonably consistent with the rule and the under-lying statute. ORS 183.482(8)(a); *Beverly Enterprises, Inc. v. Senior Services Div.*, 106 Or App 739, 745, 809 P2d 1360 (1991).

The Oregon lockout/tagout standard for controlling hazardous energy is almost identical to its federal counter-part, which was issued by the Occupational Safety and Health Administration (OSHA) on September 1, 1989. 54 Fed Reg 36,644. OAR 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.147(a)(1)(ii)(B), the rule in ques-tion, was taken verbatim from 29 CFR § 1910.147(a)(1)(ii)(B). ORS 654.003(6) provides:

---

[2] Specifically, PGE argues that its Salem facility is not subject to the lock-out/tagout standard, because its "primary purpose is to provide a central control center for crews and trucks to be dispersed into the field in order to *distribute* power to PGE customers." (Emphasis supplied.)

"Oregon assumes fullest responsibility, in accord with the federal Occupational Safety and Health Act of 1970 (Public Law 91-596), for the development, administration and enforcement of safety and health laws and standards."

Because Oregon adopted the federal rules governing the lockout/tagout standard, we look to the federal purpose to assist in discerning the Oregon purpose. *See, e.g., McKean-Coffman v. Employment Div.*, 312 Or 543, 550, 824 P2d 410, *on recon* 314 Or 645, 842 P2d 380 (1992). In issuing its final rule governing the lockout/tagout standard for the purpose of controlling hazardous energy, OSHA commented:

"OSHA has determined that certain installations under the exclusive control of electric utilities, as defined in [29 CFR § 1910.147] paragraph (a)(1)(ii)(B), are not to be covered by this rule [concerning the lockout/tagout requirements]. These installations are intended to be covered separately by a new section, § 1910.269, 'Electric Power Generation, Transmission and Distribution,' which OSHA proposed on January 31, 1988 (54 FR 4974). Because of the nature of these electrical utility operations, § 1910.269 will tailor the key provisions of this standard on lockout or tagout to meet the special safety needs of that industry." 54 Fed Reg at 36,660.

That comment makes it clear that certain installations are not subject to the lockout/tagout standard as provided, because they are to be addressed specifically by a separate section proposed in 29 CFR § 1910.269. In proposing that section, OSHA intended it to be applied to "electric power generation, transmission, and distribution facilities":

"Proposed § 1910.269 would apply to the parts of an electric utility operation that are directly involved with the generation, transmission, or distribution of electric power. Installation in buildings not used for one of these purposes would not be covered by the standard. For example, office buildings, warehouses, machine shops, and other installations which are not an integral part of generating plant, substation, or control center would not be covered by proposed § 1910.269. Work performed in these installations would not be of a type addressed by the proposal." 54 Fed Reg 4,974; 4,980.

Although the proposed rule has not been finally adopted, it sheds light on OSHA's intent in promulgating 29

CFR § 1910.147(a)(1)(ii)(B). That intent is that only the facilities that directly generate, transmit or distribute electric power are not subject to the lockout/tagout standard as provided in 29 CFR § 1910.147. Because PGE's facility is not such a facility, it is subject to the standard in the Oregon counterpart of the federal rule. The Board erred in holding otherwise.

Reversed and remanded for reconsideration.